**No. 57959.**—Keer, Maurer Company *v.* United States, protests 186297–K and 190152–K (Philadelphia).

MOLLISON, Judge: The merchandise the subject of these protests is described on the invoices as "sheepskin flicks" and was assessed with duty at the rate of 50 per centum ad valorem under the provision in paragraph 1506 of the Tariff Act of 1930 for "all other brushes, not specially provided for." Although various claims are made in the protests, the claim relied upon is that for duty at the rate of 40 per centum ad valorem under the provision in paragraph 1120 of the said act, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), for "Manufactures, wholly or in chief value of wool, not specially provided for: * * * All other * * *."

A sample of the merchandise is in evidence before us as plaintiff's illustrative exhibit 1 and consists of a wooden handle at one end of which is attached a piece of sheepskin with the wool on, the latter having been dyed various colors. The sheepskin is attached in such fashion that it presents the aspect of a ball of wool, the leather side being attached to the end of the handle and the wool side being outside. The parties have agreed that the article is composed in chief value of wool.

It is manifest from an examination of the sample that its use is as a duster in household cleaning, and, indeed, this is the gist of the testimony given by the ultimate consignee and actual importer of the articles. He also stated that because of natural characteristics of wool the dust collected by the use of the article was retained in the wool and was removed by washing, rather than by shaking, as would be the case with the ordinary feather duster.

Plaintiff relies upon the common meaning of the term "brushes" as given in dictionaries to demonstrate that the article at bar is not a brush. A typical definition of the term is that found in Webster's New International Dictionary, 2d. ed., 1945, as follows:

A device composed of bristles, vegetable fibers, wire, or the like, set in a suitable back or handle of wood, ivory, metal, or the like, and used for cleaning, scrubbing, painting, etc.

It is clear that it is only in the field of cleaning that the use of the articles at bar is similar to that of brushes. Considered from that aspect, it is the contention of counsel for the plaintiff in the brief filed in its behalf that the make-up and use of the articles at bar differ from those of brushes. It is quite obviously plaintiff's point that the wool on the articles represented by exhibit 1 is unlike in nature the bristles, fibers, or wire specifically referred to in the definition quoted above. The wool on exhibit 1 is soft and fuzzy, while bristles, fibers, and wire usually have some stiffness as compared with wool. Likewise, counsel notes that the articles here involved pick up and hold dust, and are not used to brush it off or aside, as is the case where bristles, fibers, or wires are used in cleaning operations.

For the defendant, it is urged that the definition is not limited to devices composed of bristles, fibers, or wire but is broadened by the general words "or the like," and it is contended that the individual strands of wool may properly be called fibers.

It frequently happens that the most common articles of everyday use defy precise definition, and we think the term "brush" falls into that category. Counsel for the plaintiff has cited seven decisions of this court on the subject of brushes, none of which is precisely in point and none of which, we think, establishes any rule which would be dispositive of the question raised here. Our appellate court, however, in the case of *United States* v. *Sheldon & Co.*, 4 Ct. Cust. Appls. 330, T. D. 33524, made an observation concerning the meaning of the term "brush" which, in our view, indicates the way to the conclusion we must here reach.

In that case, the court said that "The name implies something useful for *brush*-ing," thus indicating that the verb form of the word gave a clue to its meaning possibly more precisely than the noun form. Webster's New International Dictionary, *supra*, gives four meanings to the verb in its transitive use and two meanings in its intransitive use. Two of the meanings attached to the transitive verb are obviously not applicable, as are both of the intransitive verb meanings, leaving the following as the only possibilities:

**1.** To apply a brush to, according to its particular use; to rub, smooth, clean, paint, etc., with a brush.

\* \* \* \* \* \* \*

**3.** To remove by brushing, or by an act like that of brushing; —commonly with *off* or *away*; as, to *brush* off lint; to *brush* away a tear. [Italics quoted.]

As the first meaning above quoted presupposes that the article to which the action refers is a brush, it is of no aid in determining the meaning of the term "brush" as a noun. The second meaning above quoted, however, indicates that the function of a brush in cleaning implies an action which dislodges and forces away from both the article brushed *and the brush* the substance, such as dust, that it is desired to remove. The article at bar removes the dust from the article to be cleaned, but retains the dust in itself. In this way it is somewhat similar in action to the frictional electricity cleaners the subject of *Paul Oppenheim et al.* v. *United States*, 65 Treas. Dec. 956, T. D. 47099, the action of which, in turn, was likened to that of a vacuum cleaner.

On this reasoning, we are of the opinion that the article at bar is not a "brush" as that term is commonly understood and that its classification as such by the

collector was erroneous. As there seems to be no other provision of the tariff act which would cover the merchandise more specifically than the general provision by composition in paragraph 1120, as modified, *supra*, for "Manufactures, wholly or in chief value of wool, not specially provided for," that claim in the protest is sustained, and judgment will issue accordingly.