(C.D. 2437)

Arthur J. Fritz & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided March 31, 1964)

*Schneider, Mullavey & Hageman (Charles N. Mullavey and Walter H. Hageman, Jr., of counsel)* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*James F. O'Hara* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Ford, Judge: The plaintiff, in this action, protests the classification of certain carpeting described on the invoice as " 'Old Plantation type' Carpets," which range in size from 3 feet to 15 feet in width by 75 feet in length. The merchandise was classified by the collector of customs as articles, in part of fringe, as provided for in subdivision (17) of paragraph 1529(a) of the Tariff Act of 1930, as modified by

the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, with duty assessed thereon at the rate of 42½ per centum ad valorem.

Plaintiff herein contends said merchandise is properly dutiable as floor covering, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, under the provisions of paragraph 1117(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and as such subject to duty at the rate of 15 per centum ad valorem.

The record in this case consists of the testimony of Mr. Henry Gradwohl, a partner in the importing firm, who testified that his firm specializes in carpets and rugs; that he has been in the carpeting business since 1924 and is familiar with rugs and carpeting, which both have and do not have fringe.

The witness then testified as to the manufacturing operation, which is here set forth:

Now, as I was saying, this carpet is made on large looms. Some are 26" wide, some are 9', some are 36" wide, some are 12' wide, some are 13'6" wide, and as much as 18' wide. Now, this warped thread is wound around this old-fashioned loom, and this carpet is woven. It's made of rags of clothing materials, and it's woven in between these warped threads and pounded down. After every row is put in it's pounded down to give it firmness, and to make it close together.

Now, when they first start this they tie this off at the end to keep it from falling apart. If they didn't tie it off at the end it would unravel, so they have to tie it off. Then when they get to the end of the roll—they make a roll various sizes, 75' long, 78' long—when they get to the end of the roll they leave some of this warped thread sticking out at the end, and then they tie that and they cut it off. Now, many times they'll cut it off almost as short as this. Other times they take this end that you see here, and they'll weave that back in, as I have on some samples, but it's still the same thing, it's still the same carpet. It's made in a big roll. * * *

Mr. Gradwohl then testified that the imported carpeting, imported in lengths of 75 feet, is not ready for use; that it has to be cut up into the sizes required in a home; that the ends of the rolls have knots placed thereon to prevent unraveling; that when this merchandise is delivered to a home, these knots would have to be cut off, unraveled about 3½ inches, and tied back with a secure knot and cemented.

A sample of the merchandise, except as to size, was received in evidence as plaintiff's exhibit 1, and the official papers were received in evidence without marking.

It is the contention of plaintiff herein that the knots at the end of the roll are not fringe and, as such, the article is not properly dutiable under paragraph 1529(a), *supra*. In customs jurisprudence,

it has ofttimes been said that samples are potent witnesses. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676.

An examination of the merchandise involved herein establishes to our satisfaction that the involved knots and extensions do not constitute fringe. In *Davies, Turner & Company* v. *United States*, 39 CCPA 76, C.A.D. 466, the appellate court reviewed the dictionary definitions of the term "fringe," which definitions are set forth below:

[Funk & Wagnalls New Standard Dictionary (1942)]:

fringe, vt. 1.   To border or ornament with or as with a fringe or fringes.

fringe, n. 1.   An ornamental border or trimming, of pendant cords, loose threads, or tassels. * * * 2.   Any fringe-like or other border, edging, or margin; the outer or bounding portion; * * *.

[Webster's Collegiate Dictionary (1948)]:

1.   An edging or trimming made of projecting ends of a fabric, or of loose threads, or strips, twisted or plaited together at the top.   2.   Something resembling a fringe; a border; a margin; * * *.

From the foregoing definitions, the court concluded that the term "fringe," as used in the act, carries with it the quality of being ornamental. The court further stated that, even if an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not be considered as ornamental, citing *Paramount Bead Corp., Walter A. Yokel* v. *United States*, 19 CCPA 385, T.D. 45522. The merchandise involved herein is not, in our opinion, ornamental and, in fact, falls within the category of being utilitarian, since the knots prevent the unraveling of the rug.

After examining plaintiff's exhibit 1, the court is in agreement with the witness that the knots at the end of the rolls are not ornamental. The witness summed up the appearance of the knots by stating, "It's a mess."

Counsel for defendant claims plaintiff herein has failed to overcome the presumption of correctness attaching to the collector's classification. Specifically, it is urged that plaintiff has failed to prove the imported merchandise is floor covering wholly or in chief value of wool. We do not agree that counsel for plaintiff has failed to establish the involved floor covering to be in chief value of wool. At the trial, counsel for plaintiff moved in evidence, without objection on the part of counsel for the defendant, the official papers. Contained in the official papers is the invoice description "100% Wool Rag Rug." The court may consider such evidence under the circumstances. *W. T. Grant Company* v. *United States*, 38 CCPA 57, C.A.D. 440, and cases cited therein. Such evidence, in our opinion, establishes at least *prima facie* that said merchandise is in chief value of wool. The burden of proof, accordingly, shifts to defendant who must present such evidence as would refute this description.

The merchandise involved herein was invoiced, entered, and appraised at 35 and 39½ cents per square foot. Accordingly, it has satisfactorily been established that said merchandise is valued at less than 40 cents per square foot, as required by paragraph 1117(c), *supra*, as claimed by plaintiff herein.

The protest is, therefore, sustained.

Judgment will be issued accordingly.