Orazio J. FRENI, d/b/a Saratoga
Forwarding Co.

v.

UNITED STATES.

C.D. 3375; Protest No. 66/4299–18855.

United States Customs Court,
First Division.

March 27, 1968.

Walter E. Doherty, Jr., Boston, Mass.,
for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen.
(Brian S. Goldstein, New York City,
trial attorney), for defendant.

Before WATSON and MALETZ,
Judges.

MALETZ, Judge:

The issue in this case is whether merchandise is properly classifiable as brushes, or as dog equipment, or as articles of cotton. The merchandise was entered for consumption at the port of Boston as "Brushes, without handles, other," at the rate of 28 percent ad valorem under Item 750.70 of the Tariff Schedules of the United States, and so classified upon liquidation. Plaintiff claims in the alternative that the merchandise is properly dutiable as (i) "dog equipment" similar to "Dog leashes, collars, muzzles, [and] harnesses" under Item 790.10 at the rate of 12 percent ad valorem, or (ii) as "Articles not specially provided for * * * Of cotton * * * Other" under Item 386.50 at the rate of 20 percent ad valorem.

Relevant provisions of the Tariff Schedules are, as follows:

Classified under:

Other brooms and brushes

 * * * * * * * * * *

Item 750.70  Other ..........................28% ad val.

Claimed under:

Articles not specially provided for, of textile materials:

 * * * * * * * * * *

Other articles, not ornamented:
 Of cotton:

 * * * * * * * * * *

 Pile or tufted construction:

 * * * * * * * * * *

Item 386.50  Other ..........................20% ad val.

Claimed under alternatively:

Item 790.10  Dog leashes, collars, muzzles, harnesses, and similar dog equipment .....12% ad val.

Headnote 1(i), Schedule 7, Part 8, Subpart A:

1. This subpart does not include—
 (i) mechanical combs, brooms, or brushes, or combs, brooms, or brushes which are parts of articles other than toilet articles;

 * * * * * * * * * *

———◆———

The case has been submitted upon a sample exhibit and a stipulated statement of facts that "the merchandise * * * involved consists of brushes without handles; that after importation these brushes are finished by attaching proper handles to them; [and] that they are used in grooming pets, but primarily dogs."

Plaintiff's first contention is that the imported articles are excluded from classification under Item 750.70 by virtue of Headnote 1(i), Schedule 7, Part 8, Subpart A, supra. Its argument is that the term "toilet articles" as used in that Headnote is confined to humans and has no application to articles used for animals, and that since the articles in

issue are in an unfinished condition as imported, they are, therefore, "parts of articles other than toilet articles" within the meaning of the Headnote and thus excluded from classification under any provision of Schedule 7.

■ There is a basic difficulty, however, with the entire premise of this argument. The difficulty is that the imported articles are not "parts"—as plaintiff asserts.[1] To the contrary, the stipulation makes it clear that they are unfinished brushes. Hence, their classification is subject to General Interpretative Rule 10(h) of the Tariff Schedules which provides that, "unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether *finished or not finished* * *." [Emphasis supplied.] In short, in view of the stipulated nature of the articles in question, Rule 10(h) requires their classification as "brushes" under Item 750.70.

Also militating against plaintiff's claim that the imported articles are "parts" is the sample exhibit. Examination of that exhibit shows (1) that the article consists of a fabric-coated rubber mat, rectangular in shape, in which are set metal bristles, and (2) that even in that form, the article is capable of being used as a brush. That an article possessing such characteristics constitutes a "brush" for tariff purposes was made clear as early as 1917 by the decision of the Board of General Appraisers in George Borgfeldt & Co. v. United States, 32 Treas.Dec. 809, Abstract 40862 (1917). The issue there was whether certain articles were properly classified by the collector as brushes under paragraph 336 of the Tariff Act of 1913 which covered brushes of all kinds, or whether they should have been classified —as plaintiff claimed in the alternative —as a nonenumerated article under paragraph 305, as a manufacture of rubber under paragraph 368, or as prepared bristles under paragraph 337. The Board sustained the collector's action and made the following comments which are applicable here (Id. at 809–10):

* * * The article is in form, shape, and design very similar to, if not identical with, the ordinary hairbrush. In fact, it is conceded that it is a hairbrush minus the handle. It is a rubber mat, oval in shape, in which are set by means of glue, cement, or some other adhesive material, bristles of the length and character of the bristles in a hairbrush. In fact, it is intended that this article should be glued into a wooden handle and then constitute a hairbrush. * * * An examination of the article itself shows that it is capable of being used as a hairbrush in its present form, and there is no doubt but that it becomes a completed hairbrush such as is ordinarily sold as soon as it is attached to a handle.

* * * It could be used in its present form as a hairbrush. * * * That it would be as good a hairbrush as when attached to a handle scarcely seems necessary under this provision of the law. It certainly "may be applied" to the same use as a hairbrush. We are disposed to think that the every sweeping provision of paragraph 336, "brushes of all kinds," is broad enough *to cover this commodity directly.* * * *

Relevant also is Nestle-Lemur Company v. United States, 37 Cust.Ct. 209, C.D. 1825 (1956), where articles described as "Polyethylene Brush Caps with Bristles" were classified under paragraph 1506 of the Tariff Act of 1930 as "* * * all other brushes, not specially provided for * * *." The claim was that the merchandise was properly classifiable under paragraph 390 as "Bottle caps" or "sprinkler tops." The merchandise consisted of a bottle top or closure made of pliable plastic material having internal threads to permit screw-

---

1. Plaintiff's brief fails to provide any indication as to what articles the importations are "parts" of.

ing it on external threads of a bottle made of similar material. There was a small hole in the center of the article, and three rows of bristles were inserted across the center of the outside of the top.[2] The court concluded that the imported item was a combination article, exhibiting a "brush" feature and a "sprinkler top" feature, and that, since the tariff provision for brushes prescribed a higher rate of duty, the merchandise was dutiable under the provision for brushes by virtue of paragraph 1559 of the Act which provided that if two or more rates of duty were applicable to an imported article, it was to be subject to duty at the highest of such rates. The following portion of the court's opinion determining that the articles were brushes bears directly on our present problem (37 Cust.Ct. at 211):

> Citing the first definition found in Webster's New International Dictionary, 1933, of the term "brush" as follows:
>
> > 1. An instrument composed of bristles, or the like, set in a suitable back or handle, and used for various purposes. *Brushes* have different shapes and names according to their use; as clothes *brush*, paint *brush*, etc. [Italics quoted.]
>
> plaintiff argues that bristles in the imported article are not set in a "suitable back or handle" and that, in its imported condition, it is not usable for the purpose intended.
>
> We think that the bristles in the imported article are set in a back suitable for the purpose for which the article was intended to be used and that the descriptive portion of the definition is, therefore, satisfied in the case of the article at bar.

It is noted that the quoted definition has a reference to the use of brushes, and, in the case of Keer, Maurer Company v. United States, 32 Cust.Ct. 441, Abstract 57959, we observed that, in a general way, there was a use connotation to the term in the sense that articles embraced by the term exhibited a *"brush*-ing" action in their use. There is no question, however, but that the term as used in the tariff act provision, hereinbefore quoted, is not a use designation but is an *eo nomine* designation, that is to say, the test of classification is not the use of the article, but its name. Under these circumstances, use, in the condition as imported, is not a necessary concomitant of articles classifiable as brushes; it is sufficient if, in the condition as imported, they respond to the name of "brush." We think there is no question but that the articles at bar are, in that sense, brushes.

■ Given the circumstances of the present case, we need not reconsider whether use is a "necessary concomitant" for an article to be classified as a "brush" · for even assuming it is, the present article in its imported condition is capable of being used as a brush, and it is undisputed that it responds to the name "brush." Thus, the article is properly classifiable as a "brush" in any event. See Kaysons Import Corp. v. United States, 56 Cust.Ct. 146, 152, C.D. 2622 (1966). In addition, it is to be observed that a widely used industrial classification system known as "Nomenclature for the Classification of Goods in Customs Tariffs" (usually referred to as the "Brussels Nomenclature") contains an exhaustive list of "brushes"

---

2. "After importation, the bottle and the imported article * * * [were] screwed together by means of the threads, and the combination * * * [was] sold empty to the public in connection with capsules of hair tint or dye. In use, the capsule * * * [was] emptied into the bottle which * * * [was] then filled with water and the imported article * * * [was] screwed on. The liquid

* * * [was] applied to the hair by inverting the bottle over the head and squeezing the same. The liquid then * * * [flowed] through the hole in the center of the cap in greater or lesser amount, depending upon the pressure used on the bottle, and the bristles set in the cap * * * [were] used to distribute the liquid as evenly as possible." 37 Cust.Ct. at 210.

which are included within the provision for "Other brooms and brushes" and specifically includes therein "Brushes for grooming animals (horses, dogs, etc.)." The Explanatory Notes to the Brussels Nomenclature 1955, volume 3, chapter 96, pages 1164–66 (1964).[3]

Nor is there merit to plaintiff's claim that the imported articles are dutiable under Item 790.10 as "similar dog equipment." The articles which are included under that item within the phrase "similar dog equipment" are those which are similar to dog leashes, collars, muzzles, and harnesses. The enumerated articles in the item thus share the basic characteristics of being put on a dog so as to limit its freedom of movement. Scarcely falling in this category is a brush used for grooming a dog.

Plaintiff has also failed to establish that the importations are "Articles * * * Of cotton" under Item 386.50. General Headnotes and Rules of Interpretation, 9(f) (i) of the Tariff Schedules, provides that the term "of" means that the article in question is "wholly or in chief value of the named material." The proper method of determining the component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are in such condition that nothing remains to be done to them except to put them together. E. g., United States v. Perez et al., 44 CCPA 35, C.A.D. 633 (1957); United States v. Rice-Stix Dry Goods Co., 19 CCPA 232, T.D. 45337 (1931). The burden is on plaintiff to prove the component of chief value of an article; it is not a matter for speculation by the court. See e. g., United States v. Sheldon & Co., 13 Ct.Cust. Appls. 53, T.D. 40880 (1925); Strakosh v. United States, 1 Ct.Cust.Appls. 360, T.D. 31453 (1911). Against this background, to establish that the articles are

in chief value of cotton, plaintiff relies solely on statements in the commercial invoice and special customs invoice prepared by the shipper that the articles are manufactures of cotton not specially provided for. These statements, however, do not satisfy the requirements specified above for determining the component material of chief value. See also United States v. Bacharach, 18 CCPA 353, 355, T.D. 44612 (1931).

For the foregoing reasons, the protest is overruled, and judgment will issue accordingly.

---

3. Recent decisions of this court have recognized the importance of the "Brussels Nomenclature" in the arrangement of the revised tariff schedules. See Pitney-Bowes, Inc. v. United States, 59 Cust.Ct., C.D. 3116 (1967); F. L. Smidth & Company v. United States, 59 Cust.Ct., C.D. 3141 (1967).