(C.D. 4549)

NORMAN G. JENSEN AND
THE YOUNG ENGINEERS, INC. } v. UNITED STATES

Court No. 69/36576 and Court Nos. 69/20013, etc.

(Decided June 20, 1974)

*Stein & Shostak* (*James F. O'Hara* of counsel) for the plaintiffs.
*Carla A. Hills,* Assistant Attorney General (*Patrick D. Gill* and *Andrew P. Vance* trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise in these cases which were tried jointly is described on the invoices as "Studs" [69/36576] and as "Self-Locking Pannel Nut" [69/20013]. The merchandise was exported from Japan between March 1968 and October 1969 and classified in liquidation upon entry at the port of Los Angeles, California under TSUS item 646.42 as base metal fasteners or holders (except nuts) used with screws, bolts, or studs, at the duty rate of 15 or 17 *per centum ad valorem*, depending upon the date of entry. It is claimed by the plaintiffs-importers that the merchandise should be classified under TSUS item 646.56 as nuts, at the duty rate of 0.2 cent per pound.

The competing tariff provisions read:

[classified]
646.42    Cotters, cotter pins, and fasteners or holders (except nuts) used with screws, bolts, or studs, all the foregoing of base metal _____ 17% or 15% ad val.

[claimed]    Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes, screw hooks and screw rings; turnbuckles; all the foregoing not described in the foregoing provisions of this subpart, of base metal: Of iron or steel:

    \*     \*     \*     \*     \*·     \*     \*

646.56    Nuts _____ 0.2¢ per lb.

The record before the court consists of the testimony of three witnesses and documentary and sample exhibits in the instant case, and the testimony of two witnesses and documentary and sample exhibits in *The Young Engineers, Inc.* v. *United States*, 67 Cust. Ct. 190, C.D. 4272 (1971), the record in which case is incorporated into the instant case.

In C.D. 4272 the merchandise, described as "self-locking pannel [sic] nuts", was classified under TSUS item 646.42 as fasteners and claimed by the plaintiff to be properly classifiable under item 646.56 as nuts of iron or steel. The evidence in the case established that the merchandise was fabricated from carbon steel and finished with a cadmium plating. However, as there was no evidence in the case bearing on the value of the component materials the majority of the court was of the opinion that the court could not determine that steel was the component material of chief value as contended for by the plaintiff, and, accordingly, overruled the protest.

The instant case purports to be a retrial of the issue in C.D. 4272 at least to the extent of merchandise described as panel nuts. Additionally, evidence has been presented in the instant case concerning merchandise described as studs which is shown on the invoice in Court No. 69/36576. In this regard there is testimony to the effect that the studs are actually nuts and not studs (of a variety other than panel nuts) because they are threaded internally, are made to Boeing Aircraft Company's design specifications, and find use in fastening seats to he C-track on the floor of the aircraft. And the primary question before the court with respect to the "studs" as well as with respect to the "panel nuts" is whether these articles are in chief value of iron or steel so as to require further consideration by the court of plaintiffs' claim for classification of the articles under item 646.56.

On the component material of chief value issue the testimony in the instant record of Stanley R. Jones, sales manager for The Young Engineers, Inc., is pertinent.

Mr. Jones, who previously testified in C.D. 4272, testified herein that he was familiar with the merchandise at bar as a result of having observed its manufacture in Japan on one occasion and having observed the plating operation on numerous occasions, that the only components of the subject merchandise are a low carbon steel and a cadmium plating, that he did not know the relative weights of these components in the articles except that in no case does the weight of the cadmium exceed one-hundredth of one percent of the weight of the nut (R. 13), that the cadmium is present in a very thin film, approximately one ten-thousandths of an inch thick (R. 22). He stated that the only way the chemical components of the merchandise can be determined accurately would be with an analysis, and purchasers normally get a certificate of analysis; that he had certificates on the merchandise in his files, but not in court (R. 37–38). Although he is familiar with the prices which his firm paid the Japanese suppliers during the years 1968 and 1969 for the imported cadmium plated panel nuts he is not familiar with the cost of plating the nuts in Japan nor the price of the other component in the nuts, steel (R. 30).

The foregoing comprises the substance of the evidence bearing on the issue of component material of chaief value. Plaintiffs contend that the evidence establishes that the cadmium film which coats the steel nuts at issue is so *de minimis*, so inconsequential, that it could not represent the component material of chief value, citing *Broadway-Hale Stores, Inc.* v. *United States*, 63 Cust. Ct. 194, C.D. 3896 (1969); *Morris Friedman & Co.* v. *United States*, 56 Cust. Ct. 21, C.D. 2607 (1965); and *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536 (1965). And defendant contends that the testimony of the

witness Jones is not *prima facie* evidence of the component material in chief value, citing *Rudolph Miles* v. *United States*, 64 Cust. Ct. 151, C.D. 3974 (1970), and *Orazio J. Freni, etc.* v. *United States*, 60 Cust. Ct. 319, C.D. 3375, 283 F. Supp. 89 (1968).

In C.D. 3896, cited by the plaintiffs, the merchandise was place mats woven of a cellophane-like material and red yarn which was classified under paragraph 1529 of the 1930 Tariff Act as modified by T.D. 54108 and claimed to be classifiable under paragraph 31(b) of that act as modified by T.D. 52739 and T.D. 54108 as articles in chief value of cellophane. In rejecting the claimed classification the court, after stating the general rule for ascertaining component material of chief value and exceptions to the rule and citing cases supporting the rule and exceptions, stated:

> In the instant case there is not a scintilla of evidence as to the value of the materials at the time they were ready for assembling into the complete article. There is no testimony establishing which component material is of chief value. An examination of the sample does not disclose it. The sample is made of yarn and cellophane material in substantial amounts. . . .

In C.D. 2536, cited by the plaintiffs, merchandise consisting of spinning wheel planters composed of wood and bamboo parts was classified under paragraph 409 of the 1930 Tariff Act as modified by T.D.'s 53865 and 53877 as articles not specially provided for, partly manufactured of bamboo, and claimed by the importer to be properly classifiable under paragraph 412 of that act as modified by T.D.'s 52373 and 52476 as manufactures of which wood is the component material of chief value, not specially provided for. The court, noting the absence of testimony establishing wood as the component material of chief value, nevertheless concluded that wood was the component material of chief value upon the court's own inspection of a sample of the merchandise, and went on to sustain the importer's claim through application of the *de minimus* rule to the minute bamboo portion of the article.

In C.D. 2607, cited by the plaintiffs, imported whisky cup candles composed of ceramic earthenware, paraffin wax, a wick, and paint were held to be articles in chief value of earthenware as claimed under paragraph 211 of the 1930 Tariff Act as modified by T.D.'s 51802, 53857, and 53877 based in part upon the court's examination of a sample of the merchandise and its consequent rejection of the wax, wick, and paint as components in chief value.

In C.D. 3974, cited by the defendant, the merchandise consisted of painted figures in the form of replicas of a choir boy and a girl composed of celluloid, cardboard, and laced material, and celluloid, cardboard, and twined cord, which was classified as dolls under TSUS

item 737.20. The court rejected the importer's claim for classification of the articles under TSUS item 256.75 as articles of papiermache after the court's examination of the articles failed to disclose the component material of chief value, the plaintiff having offered no evidence that papier-mache was the component material of chief value. The court said:

> . . . Manifestly, examination of the samples does not make it plainly evident that papier-mache is the component material of chief value. . . .

In C.D. 3375, cited by the defendant, merchandise consisting of a fabric-coated rubber mat, rectangular in shape, in which metal brushes were set was classified as brushes, without handles, other, under TSUS item 750.70, and claimed, among other things, to be classifiable under TSUS item 386.50 as articles of cotton. The case was submitted upon a sample exhibit and a stipulation to the effect that after importation handles are attached to the articles and they are used in grooming pets, primarily dogs. The court held that the plaintiff had failed to establish that the importations were articles of cotton, the court rejecting statements appearing on the commercial invoice and special customs invoice prepared by the shipper to the effect that the articles were manufactures of cotton not specially provided for. The court said:

> . . . The burden is on plaintiff to prove the component of chief value of an article; it is not a matter for speculation by the court. . . .

From a study of the foregoing cases which have been called to the court's attention, among others, by counsel, it is clear that each case presenting the issue of component material of chief value must be decided upon the basis of its own developed facts. In the instant case there is no evidence before the court of the *costs* of the component materials *to the manufacturer* at the time they were ready to be assembled into the imported fasteners. The witness Jones is not connected with the manufacturer, and his testimony relating to the cost of plating was directed to his firm's plating costs and not to the manufacturer's plating costs. Moreover, the court's own inspection of the plated fasteners (panel nuts) depicted in exhibits 1A and 1B of the incorporated case record and of the unplated fasteners (panel nuts) depicted in collective exhibit 1 in the instant record fails to shed any light on the relative costs of the component materials involved.

The *de minimis* rule does not appear to be applicable to instant facts. The tariff schedules definitions [of words used between the descrip-,

tion of an article and a material] indicate that the *de minimus* rule is intended to apply where the *interim* words employed in the tariff provisions are "wholly of", "in part of", or "containing", and do not apply where component material of chief value must be proven. See paragraph (f), No. 9—Definitions, General Headnotes and Rules of Interpretation, TSUS. And no such *interim* words appear in the inferior heading governing item 646.56 relied upon here by the plaintiffs.

Although the plating metal may be present in the disputed articles in small quantities, it cannot be determined from this record whether or not it has a greater value than the stock metal of which the body of the articles is composed. *Cf. Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, 83, T.D. 33365 (1913), involving strip steel nickel plated wherein the plating was shown to be more valuable than the underlying body metal of the imported article. For the court to attempt to ascertain the relative values of the components in question in this case, on the basis of the evidence adduced on the record, would lead into prohibited speculation. As such, the court agrees with the defendant when it says in its brief (p. 32) : "Even assuming, *arguendo*, that it had been definitively shown that the rate of disproportion in the *amount* of cadmium as compared to the *amount* of steel is 'enormous,' this evidence in no way establishes the component of chief *value*. The correlation is *prima facie* defective."

It follows that inasmuch as the plaintiffs have failed to establish the component material of chief value in this case, it becomes unnecessary for the court to consider any other aspect of the case. These actions must be dismissed for failure of proof.

Judgment will be entered herein accordingly.