(C.D. 4038)

E. GREEN & SON (NEW YORK), INC. v. UNITED STATES

United States Customs Court, Second Division

(Dated June 18, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

NEWMAN: Judge: Plaintiff moves for a rehearing from our decision and judgment overruling the protest in *E. Green & Son (New York), Inc.* v. *United States*, 64 Cust. Ct. 241, C.D. 3985 (1970). We adhere to our decision and judgment for all the reasons previously stated; and wish to emphasize that we, assuredly, did fully consider the case of *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, C.D. 2733 (1966)—as we considered all other holdings cited in the post-trial briefs of the parties. While the opinion did not discuss *Kurz*, plainly it is not incumbent upon a court, in rendering an opinion, to discuss or comment upon every decision cited by the various parties.

However, we add these additional comments:

At the trial, plaintiff's primary claim was based on the provision in paragraph 327 of the Tariff Act of 1930, as modified, for cast-iron pipe. Here, the instant motion is addressed solely to the alternative claim that the "Type 25 Economiser Pipes" are dutiable under the provision in paragraph 327, as modified, for castings of iron which have been drilled, machined, or otherwise advanced in condition by processes subsequent to the casting process, "but not made up into articles, or parts thereof, or finished machine parts."

We found that "the merchandise was dedicated to use and essential to the functioning of Green's economizers," and concluded that "[t]his fact is sufficient to constitute the castings 'parts' of made-up articles (economizers) within the exclusionary provision of paragraph 327." [1] As is evident from our decision, we considered the fact that the imported merchandise was used in both low-level and feed-water economizers, and that the former were classifiable as machines under paragraph 372 of the Tariff Act of 1930, as modified, while the latter economizers were not so classifiable. *The Green Fuel Economizer Co., Inc.* v. *United States*, 57 Cust. Ct. 402, 411, C.D. 2829 (1966).

Plaintiff insists, in its present application, that *Chas. Kurz Co., supra*, is a "controlling authority * * * which enunciates the extant legal proposition that the dedication test for parts precludes characterization of an importation as a 'part' of a class of articles dutiable at different rates." Further, plaintiff argues that in *J. E. Bernard & Company, Inc.* v. *United States*, 44 Cust. Ct. 300, Abstract 63672 (1960), the court held that, to be part of a "made-up article" under paragraph 327, the "part" must be dedicated exclusively to a *particular* "made-up" article, namely a particular water heater.

We agree with plaintiff's contention that the "dedication test" is applicable to determining whether an article is a "part" under para-

---

[1] Customs Bulletin, Vol. 4, No. 17, page 60.

graph 327. But we are unable to agree with plaintiff's contention concerning the mode of applying that test to paragraph 327.

With reference to the "parts" issue in *Kurz*, the court stated (57 Cust. Ct. at 81):

> The record herein establishes that the imports are used with the following different tariff items: "Jig-boring machine tools," "Machine tools (except jig-boring machine tools)," "Machines for cutting or hobbing gears" (which are a separate tariff item from machine tools), and possibly with "all other machines * * * not specially provided for." It seems plain that a "part" for use with two or more of these items is not classifiable under paragraph 372. It does not meet the exclusive dedication test laid down in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831; and *Lodge Spark Plug Co.* v. *United States*, 49 Cust. Ct. 158, C.D. 2379, appeal dismissed 51 CCPA 129. The articles cannot be considered "parts" of any of these items. *Warehousing Services, Inc.* v. *United States*, 56 Cust. Ct. 260, C.D. 2635, is distinguishable. There the "part" provision in paragraph 369 was held to include a part usable either in automobiles or trucks, which are separate items. But the "part" provision in paragraph 372 is not amenable to this treatment. The difference is that paragraph 369 has a special rate provision for parts, different from the rates for the articles of which they are parts, while in paragraph 372 the rate for parts is stated to be that for the items of which they are parts. Thus the articles are not "parts" under paragraph 372 * * *.

*Kurz* did not involve paragraph 327, and that case simply is not in point, and certainly in any event, is not "controlling." Unlike paragraph 372, paragraph 327 does not provide that parts shall be dutiable at the same rate of duty as the articles of which they are parts. Paragraph 327 merely *excludes* certain parts from classification as advanced castings. Hence, our holding that the imported articles are excluded from paragraph 327 as parts of *made-up articles*, viz., economizers, is not inconsistent with the fact that they are not parts of any of the machines or machine tools provided for under paragraph 372.

It is true that, in *Bernard*, the castings were "an essential component of a particular gas burner," but there is no indication in the court's opinion that such burner was used exclusively in a *particular* water heater.

In *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831 (1963), the appellate court upheld the importer's claim that cylinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings and tappet assemblies were parts of internal combustion engines, notwithstanding that the foregoing parts were *not dedicated to any particular internal combustion engines* of the Ford Motor Company. The appellate court pointed out (id. at 24):

\* \* \* The testimony seems clear that the parts were susceptible to use in industrial and marine engines as well as in automobile engines and that they were so used and that from a physical examination of the parts when they are imported into the United States one could not tell whether they would be used in automobile engines, industrial or marine engines.

In *Warehousing Services, Inc., supra*, the court considered whether certain engine parts used in vans and pickup trucks, as well as automobiles, were dedicated for use in automobiles. The court commented as follows (56 Cust. Ct. at 267) :

Apparently counsel for plaintiff assumes that, *since a Volkswagen engine is used in vans and pickup trucks, dedication for use in automobiles is negatived* and, therefore, cannot be considered to be a part of an automobile. Without exploring the matter of sufficiency of the proof to establish the extent to which the engines for which the subject merchandise is intended are used in vehicles other than automobiles *per se*, we think it suffices to state that the language of paragraph 369, as originally enacted and as modified by the sixth protocol, *supra*, characterizes trucks as automobiles, both in its reference to "automobile trucks" and in its reference to "all other automobiles." Consequently, it is reasonable to conclude that *lack of dedication would have to be spelled out upon the basis of nonautomotive uses*, as to which, as hereinbefore observed, the record lacks probative force. [Emphasis added.]

Hence, in *Warehousing Services* automobiles and trucks were regarded as the same class of merchandise under paragraph 369 for purposes of the dedication test.

In the frequently cited case of *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, 29, T.D. 37873 (1918), the Court of Customs Appeals stated the rule which is applicable here :

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Patently, the "Type 25 Economiser Pipes" are advanced to the point where they are definitely committed to economizers, either low-level or feed-water types, which we regard as a "specific class and kind of manufacture." We think this is sufficient to meet the dedication test.

Accordingly, plaintiff's motion is denied for all the reasons presented, and an order will be entered to that effect.